IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701,<br><br>*Plaintiff*,<br><br>v.<br><br>DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>and<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>*Defendants*. | Case No. 25-3825 |

**COMPLAINT FOR DECLARATOR AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue timely 12-month findings for the fish *Betta hendra* in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary deadline. This fish from Indonesia is imported into the United States as part of our substantial aquarium trade. The Service's failure to meet the deadline delays crucial, lifesaving protections for this imperiled species, increasing the species' risk of extinction.

2. Defendants have abrogated their duty to ensure that the species is timely protected to avoid further decline and an increased risk of extinction, in violation of Section 4 of the ESA.

1

3. Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated the ESA by failing to issue a 12-month finding for the *Betta hendra* in this Complaint and directing the Service to issue the 12-month findings by a date certain.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) and 28 U.S.C. § 1331. This Court has authority to issue declaratory and injunctive relief pursuant to: 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201-2202; 5 U.S.C. § 706(2); and the Court's equitable powers.

5. The ESA provides a waiver of the federal government's sovereign immunity. 16 U.S.C. § 1540(g).

6. Plaintiff provided Defendants with 60-days' notice of their ESA violations, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to the Service dated April 4, 2025 and received by the agency on that same date.

7. Defendant Doug Burgum, Secretary of the Interior, received a copy of the Center's notice letter via first-class, certified mail on April 21, 2025.

8. Defendant U.S. Fish and Wildlife Service ("the Service") received a copy of the Center's notice letter, directed to Paul Souza Acting Director of the Service, via first-class, certified mail on April 29, 2025.

9. In a letter signed May 19, 2025, the Service indicated the "12-month findings for [this] fish are one of many outstanding actions we must complete."

10. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

11. Venue is proper in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because Defendants reside in this judicial district and a substantial part of the violations of law by Defendants have occurred in this district.

## PARTIES

### A. Plaintiffs

12. Plaintiff Center for Biological Diversity ("the Center") is a 501(c)(3) nonprofit corporation incorporated in the State of California. The Center maintains offices across the country, including in Washington, DC; California; Arizona; and Oregon; and in Baja California Sur, Mexico. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats. The Center's International Program works to protect global biodiversity by using U.S. and international law to protect imperiled species wherever they are found around the globe. In pursuit of its mission, the Center has been actively involved in seeking and securing protections for species abroad, including various ornamental fish such as bettas and other fish, lizards, frogs, and turtles in the pet trade. The Center has more than 93,000 active members and approximately 1.8 million online activists living both in the United States and other nations.

13. The Center and its members derive professional, scientific, educational, recreational, conservation, aesthetic, and other benefits from *Betta hendra* existing in the wild. The Center has members who have concrete plans to visit the habitat of this betta and attempt to view the fish. Plaintiff also has members who regularly visit wildlife markets to attempt to

3

observe and document wildlife offered for sale, including aquarium fish, and other animals in the pet trade.

14. Center member Mr. Hartl has visited Indonesia three times, returning from his most recent trip in June 2023. During these trips, Mr. Hartl visited different parts of Indonesia, often with local guides, to observe and attempt to observe rare and interesting species, including birds, mammals, reptiles, fish, and corals. Mr. Hartl has concrete plans to return to Indonesia in November of 2025, including Java, Kalimantan, and West Papua. Mr. Hartl plans to visit areas of Kalimantan looking for rare wildlife and will attempt to observe *Betta hendra* and other species.

15. Defendants' violations have directly, adversely, and irreparably harmed the Center and its members' interests in this betta. This harm is ongoing and will continue unless and until this Court provides the relief prayed for in this Complaint. The Center's members are less likely to observe *Betta hendra* in the wild as the species continues to decline without ESA protections.

16. The relief sought in this Complaint would redress Plaintiff's members' injuries. ESA listing would provide *Betta hendra* with important protections and benefits. The ESA generally bans the import, export, and sale of endangered species in interstate and foreign commerce, 16 U.S.C. § 1538(a), and requires the Service to issue regulations deemed "necessary and advisable" for the conservation of threatened species, *id.* § 1533(d). The ESA also provides for "international cooperation" in the conservation of listed foreign species. *Id.* § 1537. ESA listing increases awareness of listed species and their threats; stimulates research efforts to address conservation needs; and increases funding for conservation of species in their range countries, including for habitat conservation. Under the ESA, the Service provides financial

assistance for programs to conserve listed species in foreign countries, encourages conservation programs for such species, and offers other related assistance, such as personnel and training.

17. Therefore, the Center and its members are injured by Defendants' failure to make a timely 12-month finding on the Center's petition to list *Betta hendra* under the ESA. Defendants' protracted failure prevents the application of the ESA's substantive protections that are vitally important to the betta's survival and eventual recovery.

18. These are actual, concrete injuries presently suffered by the Center and its members. These injuries are directly caused by Defendants' acts and omissions, and they will continue to occur unless the Court grants relief. The Center and its members have no other adequate remedy at law.

**B. Defendants**

19. Defendant Doug Burgum is the Secretary of the U.S. Department of the Interior. In this capacity, Secretary Burgum directs all business of the Department of the Interior. Pursuant to the ESA, Secretary Burgum is responsible for determining whether species are endangered or threatened and for promulgating regulations to list and protect those species. In his official capacity, Secretary Burgum is responsible for the violations alleged in this Complaint.

20. Defendant U.S. Fish and Wildlife Service ("the Service") is an agency within the Department of the Interior. The Secretary of the Interior has delegated to the Service the authority to administer the ESA for many species of wildlife, 50 C.F.R. § 402.01(b), including the responsibility of complying with the ESA's mandatory listing deadlines. This authority encompasses proposed and final listing decisions for this betta species.

## STATUTORY FRAMEWORK

### A. The Endangered Species Act

21. The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Recognizing that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people," Congress enacted the ESA in 1973 "to provide a program for the conservation of" these species. 16 U.S.C. § 1531(a)(3), (b).

22. To this end, Section 4 of the ESA requires the Secretary of the Interior to determine whether any species is "endangered" or "threatened," and if so, list the species under the ESA. 16 U.S.C. § 1533(a), (c). The Secretary has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

23. An endangered species is any species that "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A threatened species is any species that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

24. The Service must list a species if it is endangered or threatened due to: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service must make listing determinations "solely on the basis of the best scientific and commercial data

available . . . after conducting a review of the status of the species." *Id*. § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

25. The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. 16 U.S.C. § 1532(16) (defining "species").

26. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receiving a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

27. If the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." 16 U.S.C. § 1533(b)(3)(A).

28. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. 16 U.S.C. § 1533(b)(3)(B).

29. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. 16 U.S.C. § 1533(b)(3)(B)(ii).

30. Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. 16 U.S.C. § 1533(b)(6)(A). This is known as a "final listing rule."

## FACTUAL BACKGROUND

### A. *Betta hendra*

31. *Betta hendra* is a small, freshwater fish related to the domestic betta fish commonly seen in pet stores.

32. Unlike its captive-bred, cosmopolitan cousin however, *Betta hendra* has only ever been found in a single river basin on Indonesian Borneo within a peat swamp forest smaller than 10 km$^2$. It lives in shallow, acidic ponds filled with leaf litter and shaded by trees. It is highly prized in the aquarium hobby for its blue-green iridescent shine, orange stripes, and territorial display behaviors.

33. The species was first described scientifically in 2013; before and since then it has faced continual domestic and international threats to its existence. The International Union for the Conservation of Nature assessed this fish as Critically Endangered in 2019.

34. *Betta hendra* is substantially threatened by deforestation and habitat destruction. The peat swamp forests relied on by the species are being rapidly deforested and converted into agricultural land. Within Central Kalimantan, the only place *Betta hendra* exists, more than half of this necessary peat swamp forest habitat was already lost by 2010.

35. The species is further threatened by poaching and international trade and demand. Wild-caught *Betta hendra* are routinely available online from U.S.-based retailers, despite its Critically Endangered status.

36. As the Center documented in a 2024 comment letter on this species, a brief online search identified 13 advertisements for *Betta hendra* available for purchase in the United States. Nine of the advertisements were for "wild" or "wild-caught" specimens, two advertisements did not specify a source, one was labeled "tank raised," and another was labeled "captive-bred." The average cost for a pair of *Betta hendra* was U.S. $66.47, while the average cost for an individual was U.S. $26.68.

37. A recent online search verified that *Betta hendra* are still available for purchase in the United States and that many listings are for wild or wild-caught specimens.

**B. Listing Petition and Response**

38. The Center petitioned the Service to list *Betta hendra* as an endangered species under the ESA on July 5, 2023. 89 Fed. Reg. 4884, 4887 (Jan. 25, 2024).

39. On January 25, 2024, the Service issued a 90-day finding determining that the petition presented substantial scientific or commercial information that an endangered listing for *Betta hendra* may be warranted. 89 Fed. Reg. at 4884.

40. This finding triggered the Service's obligation to make a 12-month finding on the *Betta hendra* petition by July 5, 2024. The deadline for making and publishing this 12-month finding has passed.

**CLAIM FOR RELIEF**

**Violation of the ESA for Failure to Publish a Timely 12-Month Finding for *Betta hendra***

41. Plaintiff re-alleges and incorporates all the allegations set forth in this complaint.

42. The ESA requires the Service to publish a 12-month finding within 12 months of receiving a petition to list a species under the Act, when it makes a 90-day finding that listing may be warranted. Defendants made a positive 90-day finding but failed to perform their nondiscretionary duty to publish a timely 12-month finding for *Betta hendra*, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

A. Declare that Defendants violated the ESA by failing to issue a timely 12-month listing determination in response to the Center's petition to list *Betta hendra*;

B. Order Defendants to issue, by a date certain, a finding as to whether listing *Betta hendra* under the ESA is warranted, 16 U.S.C. § 1533(b)(3)(B);

C. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

D. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

E. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 30th day of October, 2025

  s/ *Tanya Sanerib*
Tanya Sanerib (DDC Bar No. 473506)
(206) 379-7363
tsanerib@biologicaldiversity.org

Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211

Sarah Uhlemann (DDC No. 501328)
(206) 327-2344
suhlemann@biologicaldiversity.org
Center for Biological Diversity
120 State Avenue NE #268
Olympia, Washington 98501

*Attorneys for Plaintiff*

11